ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO.   1:09CR490 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge John R. Adams |
| BERNARD K. WATKINS, | ) | |
| | ) | SENTENCING MEMORANDUM |
| Defendant. | ) | |
| | ) | |

## I.  Introduction

Defendant Bernard Watkins was indicted on February 2, 2010 on four counts including extortion under color of official right and bribery.  On May 14, 2010, a jury found Watkins guilty of the three counts in the indictment that remained when trial commenced.  Watkins then appeared before this Court for sentencing on August 11, 2010.  This memorandum will serve to supplement the Court's oral pronouncement of sentence.

## II. Sentencing Process

Criminal sentencing is often described as a three-step process.  A district court must begin the process by calculating the advisory guideline range suggested by the United States Sentencing Commission.  *Rita v. United States*, 551 U.S. 338, 351 (2007) ("The sentencing judge… will normally begin by considering the presentence report and its interpretation of the Guidelines."). In so doing, the Court must determine the offense level for the crimes for which the defendant has been convicted and the defendant's criminal history. *See United States v. Boyd*, No. 3:07-CR-3, 2008 WL 4963198, at *14-16 (E.D.Tenn. Nov. 18, 2008).

Next, the Court must determine whether a variance or departure from the advisory guideline range would be appropriate. *United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006).

> Finally, a sentencing court must independently evaluate each of the factors in 18 U.S.C. § 3553(a), which details the considerations that a district court must weigh before sentencing a criminal defendant. Although the Guidelines form a starting point in the district court's analysis under 18 U.S.C. § 3553(a), a district court may not presume that the sentence suggested by the Guidelines is appropriate for an individual criminal defendant. A district court may hear arguments by prosecution or defense that the Guidelines sentence should not apply. In this way, a sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure. Ultimately, however, a court must exercise its independent judgment in sentencing a defendant.

*United States v. Stern*, 590 F.Supp.2d 945, 949 (N.D.Ohio 2008) (citations and quotations omitted).

### III. Advisory Guideline Calculations

Watkins base offense level is 14. U.S.S.G. § 2C1.1(a)(1). A two-level enhancement was appropriate due to the value of the bribes being $7,000. U.S.S.G. § 2C1.1(b)(2). In addition, the Government sought a two-level enhancement contending that multiple bribes had been made. U.S.S.G. § 2C1.1(b)(1). The Government also sought a four-level enhancement due to Watkins' alleged high level of authority. U.S.S.G. § 2C1.1(b)(3). Finally, the Government sought a two-level enhancement for obstruction of justice. U.S.S.G. § 3C1.1. Of these latter three enhancements requested by the Government, this Court imposed both the obstruction enhancement and the high level of authority enhancement. Accordingly, the adjusted offense level for Watkins' conduct was calculated as 22.

The Court found the obstruction enhancement to be appropriate due to Watkins' perjury

during his testimony.

> Section 3C1.1 of the Guidelines, in relevant part, instructs the district court to increase a defendant's offense level by two points if the defendant willingly attempted to obstruct the administration of justice during the course of sentencing, and the conduct related to the defendant's offense of conviction. Perjury is a proper basis for this enhancement.
>
> …
>
> Perjury occurs when a witness, testifying under oath or affirmation, gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.  The offense of perjury has three elements: 1) a false statement under oath, 2) concerning a material matter, 3) with the willful intent to provide false testimony.  A sentencing court imposing an obstruction-of-justice enhancement based on its determination that a defendant committed perjury must make specific findings on the record to aid the appellate court in reviewing that decision.  The district court must: 1) identify those particular portions of defendant's testimony that it considers to be perjurious; and 2) either make a specific finding for each element of perjury or, at least, make a finding that encompasses all of the  factual predicates for a finding of perjury.

*United States v. Ellison*, 336 Fed. Appx. 483, 486-87 (6th Cir. 2009) (citations, quotations, and alteration omitted).

In the instant matter, it was abundantly clear to the Court that Watkins committed perjury when he described his receipt of payments as a finder's fee.   In that regard, the Court finds that the testimony of Victoria Newsome was substantially more credible than Watkins.  Newsome described the payments as bribes for current contract work and detailed that the amounts were based upon percentages of payments under the contract.  In contrast, to believe that Watkins' testimony was truthful, the Court would have to conclude that he received a finder's fee for work that he never performed.  Watkins testified that he believed the payment was in exchange for assisting Newsome and her company in establishing their presence in the surrounding area.

However, the tapes of the encounters between Newsome and Watkins clearly indicate that Watkins expected a percentage of *something* in exchange for his work. Given that Watkins never did anything to assist Newsome, it strains logic to conclude that his cash payments were somehow a finder's fee. There is no doubt that his statements were false, made under oath, material to the matter at hand and made with a willful intent to provide false statements. Accordingly, the enhancement was appropriate.

U.S.S.G. § 2C1.1(b)(3) provides for a four-level enhancement if "the offense involved an elected public official or any public official in a high-level decision-making or sensitive position[.]" "'High-level decision-making or sensitive position' means a position characterized by a direct authority to make decisions for, or on behalf of, a government department, agency, or other government entity, or by a substantial influence over the decision-making process." *Id*., application note 4. In contesting this application, Watkins sought to argue that he was not in a position to make final decisions and had little, if any, unfettered discretion. He argued that, instead, he merely provided input to the ultimate decision maker. Watkins' argument is unsupported by the trial record.

Lester Fultz, the chief of safety and security for the Cleveland Metropolitan School District, testified during trial. Fultz described his interactions with Watkins as follows:

> Q. Would you describe for the jury what Mr. Watkins' role was in selecting vendors?
>
> A. Because of his technical expertise, how I would use Mr. Watkins' talents, he would sort out vendors, create specifications. We'd decide what type of product or service we needed. Mr. Watkins would then figure out how we best perform that. He would identify vendors, present to me a list of potential vendors. I would then from that list decide who was our selected contractor based on some rules of the district.

> Q. And would you rely on Mr. Watkins' recommendations of vendors that he gave to you?
>
> A. Yes, sir.

During cross-examination, Fultz admitted that while Watkins' made recommendations, Fultz himself ultimately chose the vendors. Based upon this latter testimony, Watkins argued that the above-referenced four-level enhancement was improper. The Court disagrees.

Based upon the totality of the evidence before the Court, it is clear that Watkins had "substantial influence" over the selection process. When bids came in, Watkins would take the 10 to 15 vendors and narrow them down to a much smaller group before presenting them to Fultz. After narrowing the vendors down, Watkins would then recommend a particular vendor. Those facts alone demonstrate a substantial influence on the decision-making process. In addition to those facts, Fultz testified that Watkins had the ability to single-handedly stop payment on invoices. If Watkins expressed that a repair had not been substantially completed, Fultz would not pay the invoice. Furthermore, Fultz testified that he was not an expert with respect to security cameras and therefore relied on Watkins because of his expertise. Finally, Fultz explained that he relied on Watkins input because Watkins had been with the school district for a longer period of time. All of those facts taken together demonstrate that Watkins had substantial influence over the decision-making process. Accordingly, the four-level enhancement is appropriate.

Based upon the above, Watkins' offense level is 22 and is Criminal History Category is I. His advisory guideline range, therefore, is 41 to 51 months.

**IV.  Kinds of Sentences Available**

The final calculated advisory guideline range of imprisonment is 41 to 51 months. The

5

statutory maximum for counts 1 and 3 is 240 months and the statutory maximum for count 2 is 120 months.  The maximum fine for the offense is $250,000, and supervised release of three years may be imposed.

**V.  Departure**

Watkins has not argued for a departure in this matter.  Furthermore, the Court finds no grounds to depart.  While the term departure may have appeared in Watkins' sentencing memorandum, the focus of his argument during sentencing was on the issue of a variance.

**VI. Variance and § 3553(a) Factors**

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in exercising its judgment to determine an appropriate sentence and must offer a reasoned explanation for the sentence.  Based upon those factors, the Court finds that an upward variance is appropriate under the facts presented in this matter.

In reaching its conclusion, the Court considered the nature and circumstances of the offense and the history and characteristics of the defendant.   The Court also reviewed the need for the sentence imposed: a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; b) to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the Defendant; and c) to provide the Defendant with needed educational or vocational training, medical care, and/or other correctional treatment in the most effective manner.

During the sentencing hearing, the Court detailed its analysis of each of the § 3553(a) factors.   The Court intends this memorandum to supplement its oral findings.

In the instant matter, the Court declined to impose an enhancement for multiple bribes,

determining that the two payments at issue were merely installment payments of one bribe. Furthermore, to date, the Court has not made a finding that the Government proved by a preponderance of the evidence that Watkins engaged in bribery in a similar circumstance in 2003. However, the totality of the evidence before the Court certainly indicates that Watkins had committed this type of act in the past and that he was willing to continue to do so well into the future. The videotapes presented to the Court show Watkins as calm and relaxed while accepting the cash bribes from Newsome. His actions reveal a man who is comfortable violating the law and not at all surprised to be receiving large cash payments. When evaluating the history and characteristics of the defendant, the ease with which Watkins' accepted the bribe and then lied about it under oath compelled the Court to vary upward in this matter to effectuate both specific and general deterrence.

With respect to general deterrence, the Court also made mention during sentencing of the wide-ranging corruption probe that has resulted in more than 30 guilty pleas in Cuyahoga County and the surrounding areas. As Watkins' conduct was not directly related to that probe, he will be one of the first individuals in Northeast Ohio to be sentenced while that probe continues. Due to the vast number of guilty pleas already generated, there is no question that bribery and corruption has run amok. Watkins contributed to that problem. As such, general deterrence in this arena is important to this Court and that importance is reflected in the ultimate sentence chosen by the Court.

Finally, the Court notes that Watkins' perjury has been built into the advisory guideline range. However, the Court finds that the two-level enhancement is insufficient given the extent of Watkins' dishonesty. In many cases, the obstruction enhancement is applied once the Court

finds that one witness is simply more credible than the defendant. In the instant matter, the Court had the ability to review the videotapes of the bribery transactions. Despite the overwhelming evidence contained in the tapes and Newsome's testimony regarding the bribery, Watkins chose to take the stand and insist that the tapes demonstrated a mere business transaction. The fact that Watkins so clearly views bribery as "business as usual" is particularly troubling to the Court and is not sufficiently punished through the two-level enhancement.

During the sentencing hearing, the Court considered and rejected Watkins' request for a downward variance. Herein, the Court finds no reason to reiterate the reasons that a downward variance is not warranted. The Court, however, has taken into consideration each of Watkins' arguments in determining the extent of an upward variance.

Based upon all of the § 3553(a) factors, the Court finds that a sentence of 72 months is sufficient but not greater than necessary. While this sentence contains a 21-month upward variance, such a variance is warranted for the reasons discussed above.

## VII. Sentencing Disparities

The Court has identified no sentencing disparities for similarly situated defendants. Furthermore, the Court declined to analyze any disparity with sentences handed to state court defendants. Those defendants were charged and sentenced under a distinctly different legal landscape under Ohio law. Accordingly, consideration of those sentences was not appropriate and the Court did not utilize those sentences in reaching its decision.

## VIII. Conclusion

Based upon the above reasoning, pursuant to the Sentencing Reform Act of 1984 and 18 U.S.C. § 3553, it is the judgment of the Court that the Defendant Bernard Watkins is hereby

committed to the Bureau of Prisons for a term of 72 months. The Court stated the remaining terms of Watkins' sentence on the record and in its journal entry of conviction. Accordingly, it declines to reiterate those terms herein.

       IT IS SO ORDERED.

  August 31, 2010                           /s/John R. Adams
Date                                        JOHN R. ADAMS
                                                UNITED STATES DISTRICT JUDGE